SMA LIFE ASSURANCE
COMPANY, Plaintiff,

v.

Antonio SANCHEZ PICA, Defendant.

Civ. 90–2019CCC.

United States District Court,
D. Puerto Rico.

Aug. 9, 1991.

Frank Gotay–Barquet, Feldstein, Gelpí & Gotay, Old San Juan, P.R., for plaintiff.

## ORDER

CEREZO, District Judge.

Before the Court is SMA Life Assurance Company's (SMA) Motion for Reconsideration of our Order of May 24, 1991 which denied a previous request for the issuance of an injunction against the Commissioner of Insurance of Puerto Rico. 764 F.Supp. 7. Plaintiff vehemently requests that the injunction be issued, arguing that otherwise it "will suffer irreparable injury and will be left without an adequate remedy at law, since the time to request administrative review of the Order of the Insurance Commissioner expired." [1]

We restate the chain of events that lead to plaintiff's latest petition. On July 26, 1990 plaintiff filed a complaint before this Court seeking rescission of a disability insurance policy which it had issued to defendant. Since defendant failed to contest the allegations, judgment by default was entered in favor of plaintiff on November 26, 1990.[2] Meanwhile, the defendant had chosen to litigate the matter before the Office of the Commissioner of Insurance of Puerto Rico, the local administrative agency in charge of regulating the insurance business. Upon his filing of a grievance before its complaints division, SMA promptly answered the same on November 5, 1990. On December 12, 1990, just days after a final judgment was entered in this case, SMA decided to file a motion to dismiss alleging res judicata in the administrative proceeding.

The administrative proceeding continued its course. The parties were notified of a hearing to be held on February 5, 1991 and continued until February 20, 1991. Based on the evidence presented at that hearing, the Office of the Commissioner of Insurance entered an order on March 15, 1991. The agency expressly rejected SMA's claim that the judgment entered by this Court precluded defendant's proceedings before it and concluded that the doctrine of res judicata was not applicable. It ordered that SMA was to reinstate the policy and provided that "[a]ny party that deems itself prejudiced by this determination that precedes has the right to request reconsideration of the same ... within the term of twenty (20) days from the date of its notice." [3]

It was not until April 19, 1991, more than a month after the conclusion of the administrative proceedings and nearly five months after the entry of judgment by default in this action, that plaintiff first filed its motion for an order to protect or effectuate that last judgment. The motion was denied based on considerations of equity, comity and federalism. Noting that the motion had been filed after the administrative agency had rejected plaintiff's res judicata defense and proceeded to enter its final order, we observed the possible application of the "general rule that provides that when an action is pursued until the entry of a final decision inconsistent with a prior judgment, the second decision ordinarily prevails whether the res judicata effects of the first judgment were ignored by the parties or expressly rejected by the decision-maker in the second action." *See* Order of May 24, 1991, docket entry 12, p. 4. In addition, given SMA's active partic-

---

1. *See* Motion for Reconsideration of Order, docket entry 13, p. 2, par. 4.

2. The record reflects that the judgment was signed on November 26, 1990, filed on November 27, and docketed on November 30, 1990. As the various dates are of no relevance here, no issue having been raised regarding the timeli-

ness of any post-judgment proceeding, we make reference only to the date the judgment was first signed.

3. *See* docket entry 9, exhibit 6, p. 3, and its certified translation appearing in docket entry 11, exhibit 9, pp. 2–3.

ipation in all stages of the adjudicatory procedure conducted by the administrative agency, we assumed it had sought judicial review of the adverse decision. We expressed our confidence in the Commonwealth courts' capacity to protect plaintiff "from the effects of the administrative decision by properly applying the doctrines of res judicata and collateral estoppel when judicially reviewing the same." *Id.*

Plaintiff has returned to this Court to claim that the issuance of an injunction is its only available remedy since the time to request review of the Order of the Commissioner of Insurance has expired. It deliberately failed to request administrative reconsideration and, consequently, judicial review in the Commonwealth courts, in order to "rely on the finality and conclusiveness of the federal judgment by promptly seeking injunctive relief from this Court." *See* docket entry 13, p. 3, ¶ 4.

■ Insofar as plaintiff attempted to procure this Court's intervention in the administrative proceeding by terminating the state judicial process prematurely, foregoing state judicial review in order to attack the insurance commissioner's order in federal court, its action constituted an improper use of this Court's jurisdiction which we do not sanction. It seems clear that under these circumstances it was plaintiff who, by choice, created the situation allegedly constituting irreparable injury and inadequate remedy at law upon which it now bases the request for injunctive relief. As an injunction is certainly not an available remedy when the alleged irreparable injury is caused by the party that seeks relief, this situation alone constitutes sufficient cause to dismiss the request. *See generally San Francisco Real Estate v. Real Estate Invest.*, 692 F.2d 814, 818 (1st Cir.1982).

■ There is a stronger consideration that militates against the issuance of the injunction. Plaintiff moved for the issuance of the injunction only after the administrative agency had concluded all the proceedings before it, after having actively litigated the matter there, and even when it

had a judgment in its favor issued by this court since November 1990. A quasi-judicial proceeding was conducted in the administrative agency as plaintiff was properly notified of the action filed against it, was adequately represented by an attorney, filed memoranda of law in support of its claim, was afforded a hearing where it had the right to present evidence on its own behalf and to rebut evidence presented by defendant, received a decision in which the findings of fact and conclusions of law of the adjudicator were clearly stated, and later had the opportunity to contest those findings by seeking reconsideration of the decision and by appealing to the Commonwealth courts. *See generally* Puerto Rico Administrative Procedure Act, 3 L.P.R.A. §§ 2151–2177. It was in the midst of this procedure that plaintiff then invoked the doctrine of res judicata, which was later rejected by the administrative law judge when rendering a decision plainly inconsistent with our prior judgment. Under these circumstances, we deem applicable the generally known rule that provides that when an action is pursued until entry of a final decision inconsistent with a prior one, the second decision ordinarily prevails even when the res judicata effects of the first were rejected by the decision-maker in the second action. Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4404, p. 26 (1981 & Supp.1991). After all, administrative decisions must be given res judicata effect when the agency rendering the decision "is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate." *United States v. Utah Construction Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966).

Plaintiff contends that pursuant to the Supreme Court's decision in *Parsons Steel v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), any attempt on its behalf to pursue a rehearing of the administrative order, or to seek review by the Commonwealth courts, "could have been construed as a waiver of the finality of the federal judgment." *See* docket entry 13, p. 3, ¶ 5. It further alleg-

es that "... in the event that the Commonwealth courts were to ultimately uphold the decision of the Insurance Commissioner, SMA would be barred from taking the matter back to this Court for appropriate relief." *Id.*

■ Although *Parsons* is not squarely applicable to the facts of this case, we note its relevance to the situation before us in one important respect: its holding that any attempt to seek a federal order to protect or enforce a federal judgment is meritless once the state court has considered and finally rejected a claim of res judicata. In such situations, according to *Parsons,* the provisions of the Full Faith and Credit Act, 28 U.S.C. § 1738, bar a federal court from enjoining a state action in order to protect a prior federal judgment. In *Parsons,* the Court was specifically called upon to construe the Full Faith and Credit Act in light of the relitigation exception to the Anti–Injunction Act, 28 U.S.C. § 2283, and in doing so concluded that the harmonization of both statutes required the federal courts' use of the relitigation exception only in "those situations in which the state court has not yet ruled on the merits of the res judicata issue." *Parsons,* 474 U.S. at 525, 106 S.Ct. at 772. Once a state court concludes, however, that a prior federal court judgment does not constitute res judicata and the state court enters judgment, the Full Faith and Credit Act becomes applicable. The federal court must then look to state law to determine the preclusive effect of the state court's decision, particularly the state court's resolution of the res judicata issue. The Court found that "[e]ven if the state court mistakenly rejected respondent's claim of res judicata, this does not justify the highly intrusive remedy of a federal-court injunction against the enforcement of the state-court judgment" and "[c]hallenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state court system and certiorari from this court." *Parsons,* 474 U.S. at 525, 106 S.Ct. at 772–73.

■ Although we recognize that the Full Faith and Credit Act does not require federal courts to grant preclusive effect to a state agency determination that has not been judicially reviewed, *University of Tennessee v. Elliot,* 478 U.S. 788, 794, 106 S.Ct. 3220, 3224, 92 L.Ed.2d 635, we equally note that, in those instances where the Full Faith and Credit Act does not require preclusive effect, the federal courts may still apply res judicata and collateral estoppel under federal common law rules. *Id.* And, pursuant to the established rule previously mentioned, "... when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties had an opportunity to litigate,' ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state courts." *Id.* at 799, 106 S.Ct. at 3226. Although, under Puerto Rico law, it has been held that the doctrine of res judicata is to be applied with flexibility in the administrative context, *Pagán–Hernández v. U.P.R.,* 107 D.P.R. 720, 735 (1978), this does not mean that the exception should be applied indiscriminately. *Stitzer v. University of Puerto Rico,* 617 F.Supp. 1246, 1259 (D.P.R.1985). We see no reason why the doctrine of res judicata should not apply in this instance. Consequently, we conclude that, in this case, as in *Parsons,* an injunction based on the relitigation exception of the Anti–Injunction Act would not be appropriate.

■ We need go no further in our discussion.[4] For the reasons stated

---

[4] Two additional arguments were advanced by plaintiff in its motion, but these do not merit an extended discussion. In criticizing our previous ruling on this matter, plaintiff alleged that "the traditional showing of irreparable injury is not required in a case such as the instant one in which a party petitions the Court for an injunction 'to protect or effectuate its judgment'". *See* docket entry 13, p. 4, ¶ 8. It also claimed that "reliance by the Court on the principles of comity and federalism to deny issuance of the requested injunction [was] misplaced." *Id.* at p. 5, ¶ 12. However, as explained by the Court of Appeals, "[i]n addition to the equitable requirements of irreparable injury and inadequate remedy at law that must be met before an injunction issues, the principles of comity and federalism are additional restraints against enjoining a

above,[5] plaintiff's motion for reconsideration of our previous order dismissing its request for injunctive relief is hereby DE-NIED.

SO ORDERED.

state court proceeding". *De Cosme v. Sea Containers, Ltd,* 874 F.2d 66, 68 (1st Cir.1989). Accordingly, and without further ado, plaintiff's arguments are hereby dismissed.

**5.** Our decision should not be read as suggesting that, had plaintiff filed its request for an injunction before the issuance of the final decision by the administrative agency, the same would have been automatically granted. After all, an injunction is an extraordinary remedy, rarely available as a matter of right and never more extraordinary than when, if granted, it would prevent government officials from proceeding under a statute founded on important state interests, as such injunction would offend comity and federalism. Moreover, it is also generally recognized than an injunction will not be issued when the plaintiff has an adequate remedy at law, which it does if it can assert the ground on which he seeks an injunction as a defense to the very proceeding that the injunction would put a stop to. *See* Wright and Miller, Federal Practice and Procedure: Civil § 2942, p. 378. *See also Porto Rico Tel. Co. v. Puerto Rico Communications Authority,* 189 F.2d 39 (1st Cir.1951).